NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

NAOMI G., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, A.L., *Appellees*.

No. 1 CA-JV 21-0132
FILED 10-21-2021

Appeal from the Superior Court in Maricopa County
No. JD19802
The Honorable Lori Horn Bustamante, Judge

**AFFIRMED**

COUNSEL

Maricopa County Public Advocate's Office, Mesa
By Suzanne W. Sanchez
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Jennifer R. Blum
*Counsel for Appellee Department of Child Safety*

---

## MEMORANDUM DECISION

Presiding Judge D. Steven Williams delivered the decision of the Court, in which Judge David B. Gass and Judge James B. Morse Jr. joined.

---

**W I L L I A M S**, Judge:

**¶1**         Naomi G. ("Mother") appeals the juvenile court's order terminating her parental rights to her child. For reasons that follow, we affirm.

### FACTUAL AND PROCEDURAL HISTORY

**¶2**         Mother has a long history with the Arizona Department of Child Safety ("DCS"). As a result of her substance abuse, courts previously terminated Mother's parental rights to four of her children. In 2019, Mother gave birth to another child, A.L.[1]

**¶3**         In 2018, while pregnant with A.L., Mother tested positive for amphetamines. Later in her pregnancy, Mother was admitted to the hospital with a blood alcohol level of .289. On a different occasion, four days before giving birth, Mother was again admitted to the hospital after being found intoxicated at a McDonalds with a blood alcohol level of .276. Consequently, just days after the child's birth, DCS took temporary custody of A.L. and filed a dependency petition. The juvenile court adjudicated A.L. dependent as to Mother and set a case plan of family reunification. DCS provided Mother a variety of reunification services including substance-abuse treatment, substance-abuse testing, parent-aide services, supervised visitation, and transportation.

**¶4**         Throughout the dependency, Mother struggled to obtain stable housing and lived with family members, friends, A.L.'s father, and in various homeless shelters. After Mother's counsel claimed that the struggle to find stable housing was affecting Mother's ability to participate in services, the juvenile court directed DCS to assist Mother with housing resources.

**¶5**         Mother inconsistently participated in services. In her initial referral, Mother was closed out of parent-aide services after failing to attend

---

[1] A.L.'s father is not a party to this appeal.

numerous scheduled visitations and skill sessions. In a session Mother did attend, Mother was provided skills coaching on securing housing. In late 2019, Mother was escorted off a Cradle to Crayons site because she was intoxicated and ultimately was closed out of substance abuse treatment.

**¶6**        Mother was referred a second time to substance abuse treatment. She successfully completed outpatient treatment services and recovery maintenance over an eight-month period from 2019 to 2020. In 2020, as part of her second referral to parent-aide services, Mother initially participated, but within a few months only attended one out of five skill sessions, failed to attend her midpoint appointment, and was otherwise unresponsive. Mother followed a similar pattern with substance abuse testing. She participated and regularly tested negative at the beginning, but then missed many tests and stopped participating by the end of the year. Additionally, after being unresponsive, Mother's parent-aide services closed out unsuccessfully.

**¶7**        In November 2020, DCS moved to terminate Mother's parental rights based on the fifteen-month out-of-home placement ground. DCS then referred Mother for a third time to parent-aide services. Following a termination trial, and after taking the matter under advisement, the juvenile court terminated Mother's parental rights on the fifteen-month out-of-home placement ground, *see* A.R.S. § 8-533(B), and found termination to be in A.L.'s best interests.

**¶8**        Mother timely appealed. We have jurisdiction under Article 6, Section 9, of the Arizona Constitution, A.R.S. §§ 8-235(A), 12-120.21(A)(1), -2101(A)(1), and Arizona Rule of Procedure for the Juvenile Court 103(A).

## DISCUSSION

**¶9**        Parental rights are fundamental, but not absolute. *Dominique M. v. Dep't of Child Safety*, 240 Ariz. 96, 97, ¶ 7 (App. 2016). A court may terminate a parent's right to the care, custody, and management of their child "if it finds clear and convincing evidence of one of the statutory grounds for severance, and also finds by a preponderance of the evidence that severance is in the best interests of the children." *Id.* at 98, ¶ 7.

**¶10**        We review a termination ruling for an abuse of discretion, accepting the court's factual findings unless clearly erroneous, *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004), and view the evidence in the light most favorable to sustaining the court's ruling, *Manuel M. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 205, 207, ¶ 2 (App. 2008). Because the juvenile court "is in the best position to weigh the evidence, observe the

parties, judge the credibility of witnesses, and resolve disputed facts," we will affirm an order terminating parental rights if reasonable evidence supports the order. *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009) (quoting *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 4 (App. 2004)).

**¶11**        Mother only challenges whether DCS made diligent reunification efforts. *See* A.R.S. § 8-533(B)(8) (as a prerequisite to termination under the out-of-home placement ground, DCS must make "a diligent effort to provide appropriate reunification services"). Mother does not challenge the juvenile court's statutory findings, or that termination of the parent-child relationship was in A.L.'s best interests. *See* ARCAP 13(a) (requiring appellant's brief contain a statement of issues for review, supporting legal authority, references to the record, and reasons for each contention); *Crystal E. v. Dep't of Child Safety*, 241 Ariz. 576, 578, ¶ 6 (App. 2017) ("[W]e adhere to the policy that it is generally not our role to *sua sponte* address issues not raised by the appellant."); *Christina G. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 231, 234, ¶ 14 n.6 (App. 2011) (recognizing the failure to develop an argument on appeal usually results in abandonment and waiver of the issue).

**¶12**        Mother's argument that DCS failed to provide her with adequate housing resource assistance is not persuasive. DCS must provide Mother with "the time and opportunity to participate in programs designed to help her become an effective parent," *Maricopa Cnty. Juv. Action No. JS-501904*, 180 Ariz. 348, 353 (App. 1994), but DCS need not provide every conceivable service or ensure Mother participates in each service it offers, *id.* The record shows a parent-aide representative coached Mother about housing resources as early as her first referral. At trial, the DCS caseworker testified that housing resources were provided as recently as January 2021, just two months before the termination trial.

**¶13**        Further, the record shows Mother's inconsistent participation in services generally contributed to any lack of housing services. The requirement that DCS provide reunification efforts "does not oblige the State to undertake rehabilitative measures that are futile." *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 192, ¶ 34 (App. 1999). Here the record shows DCS provided a multitude of services, including housing resources, over the course of the dependency. Mother has failed to show error.

**CONCLUSION**

**¶14**　　　For the foregoing reasons, we affirm the juvenile court's order terminating Mother's parental rights to her child.

